GREENBELT-NIGHT BOX
2017 MAR 31 PM 5:54
U.S. BANKRUPTCY COURT
DISTRICT OF MARYLAND

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**YVONNE ALSTON,**
10012 Cedarhollow Lane
Largo, MD 20774

Plaintiff,

vs.

**EMBRACE HOME LOANS**

Defendant,

**FREEDOM PLUS / CROSS RIVER**
**Serve:** CSC-Lawyers Incorp. Service Co.
885 Teaneck Road
Teaneck, NJ 07666

Defendant,

**CROSSCOUNTRY MORTGAE INC**

Defendant,

**ONEMAIN FINANCIAL, INC**

Defendant,

**FIRST NATIONAL BANK OF OMAHA**

Defendant,

**ADVANCEPOINT CAPITAL**
**Serve:** CSC-Lawyers Incorp. Service Co.
51 Haddonfield Rd, Suite 135
Cherry Hill, NJ 08002

Defendant,

**CNU ONLINE CASHNETUSA**

Defendant,

**GECRB / SYNCHRONY BANK**

CIVIL ACTION NO. 17-CV-00033-TDC
**JURY TRIAL DEMANDED**

FILED ENTERED
LOGGED RECEIVED
MAR 31 2017
AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DEPOSIT BOX

Defendant,

**ELAN FINANCIAL SERVICES**

Defendant,

**IDS CASUALTY INSURACE CO.**

Defendant,

**PHYSICIAN'S LIFE INSURANCE**

Defendant,

**MONTGOMERY WARD**
**Serve:** CSC-Lawyers Incorp. Service Co.
51 Haddonfield Rd, Suite 135
Cherry Hill, NJ 08002

Defendant,

**SUNTRUST BANK**

Defendant,

**POWER WINDOW AND SIDING**
**Serve:** CSC-Lawyers Incorp. Service Co.
5000 Hilltop Drive
Brookhaven, PA 19015

Defendant,

**PRIMARY RESIDENTIAL MORTG**

Defendant.

FILED ENTERED
LOGGED RECEIVED
MAR 3 1 2017
AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DEPOSIT BOX

**COMPLAINT AND JURY DEMAND**

The Plaintiff, Yvonne Alston, bring this complaint against the defendants Embrace Home Loans, Inc. ("Embrace"), Freedom Plus/Cross River ("Cross River"), CrossCountry Mortgage Inc ("CMI"), One Main Financial ("OneMain"), First National Bank of Omaha ("FNBO"), AdvancePoint Capital ("Advance"), CNU Online Cashnetusa ("CNU"), Synchrony Bank, U.S.

Bank National Asociation t/a ELAN Financial Services ("ELAN" or “US Bank”), IDS Property Casualty Insurance Company (“IDS”), Physician's Life Insurance ("PLI"), Montgomery Ward & Co. ("Montgomery Ward"), SunTrust Bank ("SunTrust"), Power Window And Siding ("PWS"), Primary Residential Mortgage, Inc ("PRMI"), and alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for a consumer seeking actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. § 1681 et seq. ("FCRA").

**PARTIES**

2. The Plaintiff is a natural person and resides in Prince George's County Maryland.

3. Embrace is a mortgage lender with offices throughout the US, including MD.

4. Freedom Plus offers unsecured loan products to consumers seeking funds for refinancing and home improvement. All loans available through Freedom Plus are made by Cross River Bank, which is a state chartered commercial bank that provides personal and business banking services to individuals and companies across the United States.

5. CrossCountry is mortgage broker and Freddie Mac, Fannie Mae and Ginnie Mae Approved Seller/Servicer that is licensed in 49 states to offer a wide portfolio of home purchase, refinance, and home equity products.

6. OneMain, fka Citigroup, is a financial institution that provide credit to consumers, including credit cards, home loans, auto loans and banking products.

7. FNBO was founded in 1857 and provides personal and business banking services.

8. Advance provides business loans alternatives.

9. CNU offers payday loans, installment loans and lines of credit.

10. Synchrony, fka GE Capital Retail Bank, provides banking products and services.

11. U.S. BankELAN provides credit card transaction management services.

12. IDS owns or controls Ameriprise Auto and Home, which is one of the nation's fastest growing insurance companies.

13. PLI offers life and medicare insurance services. Additionally, the company also offers annuity products.

14. Montgomery Ward operates as a mail-order and online retailer. It sells bed and bath products, furniture, home products, electronics, health and beauty products, outdoor products, gifts and toys, jewelry, products for women, and products for men. The company was founded in 1872 and is based in Chicago, Illinois.

15. SunTrust is a financial institution that provide credit to consumers, including credit cards, home loans, auto loans and banking products.

16. PWS was founded in 1987 and is one of the leading home remodeling contracting companies in the United States.

17. PRMI is one of the top mortgage companies in the US.

## FACTS

18. Within one year of the filing of this complaint the Plaintiff obtained her Trans Union and Experian credit reports.

19. On her Trans Union credit report were several credit inquiries by entities that Plaintiff had no credit account or business relationship. Nor did the Plaintiff recently apply for credit with these entities or authorize these entities to obtain her reports. Further, these entities did not offer Plaintiff credit or otherwise make a firm offer of credit.

20. The entities appearing that illegally procured Plaintiff's Trans Union credit report included CNU, Synchrony, Vivint, ELAN, Ameriprise, PLI, Montgomery Ward, and SunTrust.

21. On her Experian credit report were several inquiries by entities that Plaintiff had no account. Nor had the Plaintiff applied for credit or authorized these entities to obtain her reports. Further, these entities did not offer Plaintiff credit.

22. The entities appearing that illegally procured Plaintiff's Trans Union credit report included Embrace, Cross River, Citizens, CrossCountry, OneMain, Prosper, FNBO, Discover, PRMI and Advance.

23. In September 2016 Plaintiff sent dispute letters to Trans Union and Experian wherein Plaintiff stated the inquiries by the defendants were illegal.

24. In her disputes the Plaintiff specifically stated that the defendants' inquiries were unauthorized and requested that Experian and Trans Union investigate whether the defendants had a permissible purpose to acquire her report. Plaintiff further stated that if the defendants represented that she applied for credit with them, the defendants were mistaken or someone had stolen her identity.

25. Presumably Experian and Trans Union performed their statutory duties to notify the defendants of Plaintiff's disputes; and the defendants verified the disputed information as being reported accurately without investigating the Plaintiff's claims in her dispute letters. Upon information and belief, the defendants did not take any steps to verify that they had authorization to obtain Plaintiff's credit reports or take any steps to verify defendants had an application from Plaintiff, much less verify the application was not fraudulent or the result of identity theft.

26. In October 2016 Plaintiff sent more dispute letters to Trans Union and Experian wherein Plaintiff stated the inquiries by the defendants were illegal.

27. In her disputes the Plaintiff specifically stated that the defendants' inquiries were not authorized, did not result in a firm offer of credit, were not account reviews and were not

done for purposes of collecting a debt. Plaintiff further stated that Trans Union and Experian should conduct an investigation to verify or validate whether the credit pulls resulted in a firm offer of credit, were done for purposes of an account review or to collect a debt, or that I authorized the credit inquiry.

28. Presumably, Experian and Trans Union performed their statutory duties to notify the defendants of Plaintiff's disputes; and the defendants verified the disputed information as being reported accurately without verifying whether the credit pulls were authorized, or to make a firm offer of credit, or to conduct an account review or for debt collection purposes. The defendants did not take any steps to verify that they had authorization to obtain, did not taken any steps to verify they obtained her credit to make a firm offer of credit, and did not take any steps to verify they had an account or debt with the Plaintiff.

29. Experian deleted several credit inquiries despite the defendants' instructions to continue reporting the credit inquiries. Experian deleted the inquiries in contradiction to defendants' instructions to continue reporting the inquiries because Experian requested the defendants provide certain information and defendants failed to do so.

**COUNT ONE: VIOLATIONS OF FCRA**
**(15 U.S.C. §§1681b(f), 1681q)**

30. Plaintiff incorporates paragraphs 1-29 by reference.

31. Defendant PLI did not obtain the Plaintiff's reports for the purpose of an account review or to make a firm offer of credit or to process an credit application. Upon information and belief, the defendants falsely represented that they were obtaining Plaintiff's report for a permissible purpose.

32. Defendant Embrace did not obtain the Plaintiff's Experian report for the purpose of an account review or to make a firm offer of credit or to process a credit application. Rather,

Embrace obtained Plaintiff's report: (i) for marketing purposes, (ii) collect data and information to sale the information to a third party, (iii) research and/or marketing, (iv) harassment, (v) maliciously violate Plaintiffs' privacy, or (vii) some other impermissible purpose. In order to perpetuate this fraud, Embrace falsely represented to Experian that it was obtaining Plaintiff's report for a permissible purpose, all the while knowing it was obtaining Plaintiff's report for a purpose outside of the purposes permitted under the FCRA.

33. Defendant CrossCountry did not obtain the Plaintiff's Experian report for the purpose of an account review or to make a firm offer of credit or to process a credit application. Rather, CrossCountry obtained Plaintiff's report: (i) for marketing purposes, (ii) collect data and information to sale the information to a third party, (iii) research and/or marketing, (iv) harassment, (v) maliciously violate Plaintiffs' privacy, or (vii) some other impermissible purpose. In order to perpetuate this fraud, CrossCountry falsely represented to Experian that it was obtaining Plaintiff's report for a permissible purpose, all the while knowing it was obtaining Plaintiff's report for a purpose outside of the purposes permitted under the FCRA.

34. Defendant OneMain did not obtain the Plaintiff's Experian report for the purpose of an account review or to make a firm offer of credit or to process a credit application. Rather, OneMain obtained Plaintiff's report: (i) for marketing purposes, (ii) collect data and information to sale the information to a third party, (iii) research and/or marketing, (iv) harassment, (v) maliciously violate Plaintiffs' privacy, or (vii) some other impermissible purpose. In order to perpetuate this fraud, OneMain falsely represented to Experian that it was obtaining Plaintiff's report for a permissible purpose, all the while knowing it was obtaining Plaintiff's report for a purpose outside of the purposes permitted under the FCRA.

35.     Defendant Synchrony did not obtain the Plaintiff's Trans Union report for the purpose of an account review or to make a firm offer of credit or to process a credit application. Rather, Synchrony obtained Plaintiff's report: (i) for marketing purposes, (ii) collect data and information to sale the information to a third party, (iii) research and/or marketing, (iv) harassment, (v) maliciously violate Plaintiffs' privacy, or (vii) some other impermissible purpose. In order to perpetuate this fraud, Synchrony falsely represented to Trans Union that it was obtaining Plaintiff's report for a permissible purpose, all the while knowing it was obtaining Plaintiff's report for a purpose outside of the purposes permitted under the FCRA.[1]

36.     Defendant IDS did not obtain the Plaintiff's Trans Union report for the purpose of an account review or to make a firm offer of credit or to process a credit application. Rather, IDS obtained Plaintiff's report: (i) for marketing purposes, (ii) collect data and information to sale the information to a third party, (iii) research and/or marketing, (iv) harassment, (v) maliciously violate Plaintiffs' privacy, or (vii) some other impermissible purpose. In order to perpetuate this fraud, IDS falsely represented to Trans Union that it was obtaining Plaintiff's report for a permissible purpose, all the while knowing it was obtaining Plaintiff's report for a purpose outside of the purposes permitted under the FCRA

37.     Defendant US Bank did not obtain the Plaintiff's Trans Union report for the purpose of an account review or to make a firm offer of credit or to process a credit application. Rather, US Bank obtained Plaintiff's report: (i) for marketing purposes, (ii) collect data and information to sale the information to a third party, (iii) research and/or marketing, (iv) harassment, (v) maliciously violate Plaintiffs' privacy, or (vii) some other impermissible purpose. In order to perpetuate this fraud, US Bank falsely represented to Trans Union that it was

---

[1] Synchrony obtained Plaintiff's Trans Union on two different and separate occasions. Synchrony's credit pull on 09/06/2016 was authorized. But Synchrony's credit pull on 05/14/2016 was not authorized.

obtaining Plaintiff's report for a permissible purpose, all the while knowing it was obtaining Plaintiff's report for a purpose outside of the purposes permitted under the FCRA.

38. Defendant SunTrust did not obtain the Plaintiff's Trans Union report for the purpose of an account review or to make a firm offer of credit or to process a credit application. Rather, SunTrust obtained Plaintiff's report: (i) for marketing purposes, (ii) collect data and information to sale the information to a third party, (iii) research and/or marketing, (iv) harassment, (v) maliciously violate Plaintiffs' privacy, or (vii) some other impermissible purpose. In order to perpetuate this fraud, SunTrust falsely represented to Trans Union that it was obtaining Plaintiff's report for a permissible purpose, all the while knowing it was obtaining Plaintiff's report for a purpose outside of the purposes permitted under the FCRA.

39. Defendant PRMI did not obtain the Plaintiff's Experian report for the purpose of an account review or to make a firm offer of credit or to process a credit application. Rather, PRMI obtained Plaintiff's report: (i) for marketing purposes, (ii) collect data and information to sale the information to a third party, (iii) research and/or marketing, (iv) harassment, (v) maliciously violate Plaintiffs' privacy, or (vii) some other impermissible purpose. In order to perpetuate this fraud, PRMI falsely represented to Experian that it was obtaining Plaintiff's report for a permissible purpose, all the while knowing it was obtaining Plaintiff's report for a purpose outside of the purposes permitted under the FCRA.

40. Defendant Montgomery Ward did not obtain the Plaintiff's Trans Union report for the purpose of an account review or to make a firm offer of credit or to process a credit application. Rather, Montgomery Ward obtained Plaintiff's report: (i) for marketing purposes, (ii) collect data and information to sale the information to a third party, (iii) research and/or marketing, (iv) harassment, (v) maliciously violate Plaintiffs' privacy, or (vii) some other

impermissible purpose. In order to perpetuate this fraud, SunTrust falsely represented to Trans Union that it was obtaining Plaintiff's report for a permissible purpose, all the while knowing it was obtaining Plaintiff's report for a purpose outside of the purposes permitted under the FCRA..

41. Defendant CNU did not obtain the Plaintiff's Trans Union report for the purpose of an account review or to make a firm offer of credit or to process a credit application. Rather, CNU obtained Plaintiff's report: (i) for marketing purposes, (ii) collect data and information to sale the information to a third party, (iii) research and/or marketing, (iv) harassment, (v) maliciously violate Plaintiffs' privacy, or (vii) some other impermissible purpose. In order to perpetuate this fraud, CNU falsely represented to Trans Union that it was obtaining Plaintiff's report for a permissible purpose, all the while knowing it was obtaining Plaintiff's report for a purpose outside of the purposes permitted under the FCRA.

42. Defendant FNBO did not obtain the Plaintiff's Experian report for the purpose of an account review or to make a firm offer of credit or to process a credit application. Rather, FNBO obtained Plaintiff's report: (i) for marketing purposes, (ii) collect data and information to sale the information to a third party, (iii) research and/or marketing, (iv) harassment, (v) maliciously violate Plaintiffs' privacy, or (vii) some other impermissible purpose. In order to perpetuate this fraud, FNBO falsely represented to Experian that it was obtaining Plaintiff's report for a permissible purpose, all the while knowing it was obtaining Plaintiff's report for a purpose outside of the purposes permitted under the FCRA.

43. Defendant PLI did not obtain the Plaintiff's Trans Union report for the purpose of an account review or to make a firm offer of credit or to process a credit application. Rather, PLI obtained Plaintiff's report: (i) for marketing purposes, (ii) collect data and information to sale the information to a third party, (iii) research and/or marketing, (iv) harassment, (v) maliciously

violate Plaintiffs' privacy, or (vii) some other impermissible purpose. In order to perpetuate this fraud, PLI falsely represented to Trans Union that it was obtaining Plaintiff's report for a permissible purpose, all the while knowing it was obtaining Plaintiff's report for a purpose outside of the purposes permitted under the FCRA

44. According to Plaintiff's Experian report, defendants Embrace, CrossCountry, OneMain, PRMI and FNBO obtained the credit report for one of the following reasons:

    (i)     creditor to offer Plaintiff preapproved credit;

    (ii)     employer to extend an offer of employment;

    (iii)     potential investor to assess the risk of a current obligation;

    (iv)     current creditor to monitor Plaintiff's accounts;

    (v)     end user to complete Plaintiff's mortgage loan application; and

    (vi)     insurer to underwrite insurance for auto or home coverage.

45. None of the defendants identified in the immediately preceding paragraph 44, offered the Plaintiff preapproved credit or employment. None of the defendants were potential investors or assessing the risk of a current obligation of the Plaintiff. None of the defendants were current creditors or monitoring an account of the Plaintiff. None of the defendants were completing a mortgage loan application. None of the defendants were an insurer or underwriting insurance for auto or home coverage. The Defendants knew at the time they obtained Plaintiff's report that it had no legitimate purpose under the FCRA to obtain her report, but obtained it anyway for business purposes and in total disregard of Plaintiff's privacy rights under the FCRA.

46. According to Plaintiff's Trans Union report, defendants PWS, ELAN, IDS, PLI, Synchrony, Montgomery Ward and SunTrust obtained Plaintiff's credit report for a promotional inquiry. But this reason was false and deceptive b ecause none of the defendants actually made

an offer of credit, much less a firm offer of credit to Plaintiff. The defendants knew at the time they obtained Plaintiff's report that they had no legitimate purpose under the FCRA to obtain her report, but they obtained it anyway for business purposes and in total disregard of Plaintiff's privacy rights under the FCRA.

47.     According to Plaintiff's Trans Union report, CNU obtained Plaintiff's credit report for a regular inquiry. But this reason was false and deceptive because the Plaintiff did not apply for credit with either of the defendants and nor did she otherwise authorize either defendant to obtain her report. CNU knew at the time it obtained Plaintiff's report that it had no legitimate purpose under the FCRA to obtain her report, but obtained it anyway for business purposes and in total disregard of Plaintiff's privacy rights under the FCRA.

48.     Upon information and belief, *all* the defendants have received complaints from other consumers regarding the illegal credit inquiries and thereby, the defendants know and intended to illegally obtain Plaintiff's credit reports. After a reasonable time to conduct discovery, Plaintiff believes she can prove that the defendants have received numerous disputes from consumers like Plaintiff, complaining of the same conduct as alleged in this complaint, with respect to the defendants' practice of obtaining consumers' credit reports without proper authority to do so.

49.     *All* the defendants know their purpose for obtaining consumers' reports are often for reasons and/or purposes not sanctioned or valid under the law. For instance, the defendants often will obtain the report for purposes, such as research, marketing, both of which are not allowed under the FCRA.

50.     *All* Defendants know that the FCRA requires that the defendants have a purpose designated under §1681b to acquire Plaintiff's credit reports. Upon information and belief, at the

time that the defendants requested Plaintiff's credit report, the defendants knew, or should have known, that they *were not* obtaining Plaintiff's report for a permissible purpose.

51. Upon information and belief, *all* the defendants obtained Plaintiff's credit reports for one or more of the following reasons: (1) marketing, (2) research, (3) investigation, (4) sale the information to a third party, (5) maliciously violate Plaintiff's privacy, or (6) some other impermissible purpose.

52. *All* the Defendants, except for CNU, believe they do not need a legitimate purpose to acquire a consumers report when the credit inquiry is considered a soft pull because such an inquiry does not affect the consumers' credit score.

53. After a reasonable time to conduct discovery, Plaintiff believes she can prove that *all* the defendants have engaged in a pattern and practice of wrongful and unlawful behavior with specific respect to its illegal procurement by systematically representing to a credit reporting agency that they have a certified reason for the inquiry while knowing that did not have certified reason and in fact were requesting the reports for reasons not allowed under the law.

**54. *All* the Defendants conduct in willfully, intentionally or recklessly obtaining Plaintiff's credit information and invading Plaintiff's privacy, was a violation of Plaintiff's rights under FCRA, at 15 U.S.C. §§1681b(f) and 1681q.**

55. As a direct and proximate result of each of the Defendants violations of the FCRA, Plaintiff has suffered and will continue to suffer considerable harm and injury including, but not limited to: pecuniary costs accruing from her efforts to correct her credit report, mental anguish and emotional distress resulting from her efforts to correct the report, mental anguish and emotional distress from the ongoing invasion of her privacy and the possibility of future unauthorized inquiries into his personal financial information and/or risk of additional instances

of identity theft resulting from such inquiries, entitling Plaintiff to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

56. As a direct and proximate result of the Defendant CNU's violation of the FCRA, Plaintiff has suffered and will continue to suffer considerable harm and injury including, but not limited to: reduction of credit score, damage to financial reputation, mental anguish and emotional distress from the ongoing invasion of his privacy and the possibility of future unauthorized inquiries into his personal financial information and/or risk of additional instances of identity theft resulting from such inquiries, entitling Plaintiff to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

57. The Defendants violations were not only negligent but also willful within the meaning of 15 U.S.C. §1681n(a). As a result of the CRAs' willful noncompliance with the requirements of §1681q, Plaintiff is entitled to statutory and punitive damages under §1681n(a).

**COUNT TWO: VIOLATIONS OF FCRA**
**(15 U.S.C. §1681s-2(b))**

58. Plaintiff incorporates paragraphs 1-57 by reference.

59. Each of the Defendants violated the FCRA, 15 U.S.C. §1681s-2(b)(1)(A)-(E) by failing to fully and properly respond to the Plaintiff's disputes.

60. Plaintiff disputed the inquiries from Embrace, CrossCountry, OneMain, PRMI and FNBO that were appearing on her Experian report and Experian forwarded her disputes to each of the foregoing defendants.

61.     Plaintiff disputed the inquiries from PWS, ELAN/US Bank, IDS, PLI, Synchrony, Montgomery Ward, CNU and SunTrust that were appearing on her Trans Union report and Trans Union forwarded her disputes to each of the foregoing defendants.

62.     *All* of the Defendants' responses to Plaintiff's disputes did not constitute a thorough, detailed careful inquiry of Plaintiff's claims. When responding to Plaintiff's disputes, *all* of the defendants performed a quick, sloppy, and superficial response that consisted of nothing more than merely verifying identification information and/or matching the information currently being reported with the information on each of the defendants' computer system and/or the same information previously reported by them.

63.     In response to Plaintiff's dispute/claim that he did not authorize the credit inquiries and that the inquiries may have been by mistake or due to fraud, *all* of the defendants should have done more than just data matching. A reasonable response should have included an investigation into whether the credit inquiry was done by mistake, not simply checking on whether they made a credit inquiry. Further, *all* of the defendants should have investigated whether the Plaintiff made the credit inquiry or some other person fraudulently made the inquiry in the Plaintiff's name. At a minimum, *all* of the defendants should have reviewed the purported authorizations (i.e. credit application, etc.) to verify *they actually have a document* or some other proof that Plaintiff authorized the credit pull and to verify that the authorization actually came from Plaintiff and not some fraudulent imposter.

64.     In response to Plaintiff's claim that the defendants did not make a firm offer of credit to her, *all* of the defendants should have done more than just data matching. A reasonable response should have included an investigation into whether the defendants *actually sent* Plaintiff a firm offer of credit. Had *all* of the defendants done a reasonable investigation, they

would have discovered that they did not make a firm offer of credit and would have deleted the inquiries from Plaintiff's report.

65. In response to Plaintiff's claim that *all* of the defendants did not have an account with the Plaintiff, *all* of the defendants should have investigated whether the Plaintiff had an *actual account* or a debt with the defendants. A reasonable response should have included an investigation into whether *all* of the defendants had an account with the Plaintiff. Had the defendants done a reasonable investigation, they would have discovered that they did not have an account with the Plaintiff, that no account review was conducted and would have deleted the inquiries from Plaintiff's report.

66. Had *all* of the defendants performed their statutory obligations, *all* of the defendants would have notified Experian and Trans Union that in light of Plaintiff's disputes, they could not verify the inquiries were done for a permissible purpose and instructed Experian and Trans Union to delete the inquiries or, at a minimum, report the inquiries as disputed.

67. *All* of the Defendants' policies and procedures to simply data match information that it previously reported or data match the information that it has on its computer desktop with the information currently be reported to the CRAs, instead of conducting a careful inquiry into the substance and merits of a consumers' dispute, is unreasonable and a willful violation of the FCRA, 15 U.S.C. §1681s-2(b).

68. *All* of the Defendants' intentional decision to report a credit inquiry while knowing they did not verify whether they had a permissible purpose for the credit inquiries, is a willful violation of the FCRA, 15 U.S.C. §1681s-2(b). Accordingly, *all* of the Defendants' failure to comply with the requirements of 15 U.S.C. 1681s-2(b)(1)(A)-(E) is willful within the meaning

of 15 U.S.C. 1681n(a). Alternatively, *all* of the Defendants' failure to comply with the requirements of 15 U.S.C. 1681s-2(b) was negligent within the meaning of 15 U.S.C. 1681o(a).

69. As a result of *all* of the Defendants' foregoing violations of 15 U.S.C. 1681s-2(b), Plaintiff's suffered actual damages, including but not limited to: out-of-pocket costs, loss of credit opportunity, damage to reputation, invasion of privacy, fear of future encroachments to her privacy, embarrassment, frustration, anxiety, anger, humiliation and other emotional and mental distress.

70. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from *all* of the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. 1681n and 1681o.

WHEREFORE, Plaintiff requests $50,000 in actual damages from all Defendants; $150,000 in punitive damages for violations of the FCRA; $19,000 or more in statutory damages; costs for litigating this action; and Plaintiff reserves his right to request legal fees in the event she retains an attorney.

**TRIAL BY JURY IS DEMANDED.**

Dated: March 30, 2017

Respectfully submitted,

**YVONNE ALSTON**

Yvonne Alston
10012 Cedarhollow Ln
Largo, Maryland 20774
(240) 432-0927
*Pro Se Plaintiff*