UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| YVONNE ALSTON,<br><br>    Plaintiff,<br><br>    v.<br><br>FREEDOM PLUS/CROSS RIVER,<br>ADVANCEPOINT CAPITAL,<br>FIRST NATIONAL BANK OF OMAHA,<br>CNU ONLINE CASHNETUSA,<br>GECRB/SYNCHRONY BANK,<br>MONTGOMERY WARD,<br>SUNTRUST BANK,<br>POWER WINDOW AND SIDING,<br>PRIMARY RESIDENTIAL MORTGAGE,<br>INC. and<br>IDS CASUALTY INSURANCE CO.<br><br>    Defendants. | Civil Action No. TDC-17-0033 |

**MEMORANDUM OPINION**

Plaintiff Yvonne Alston has brought this civil action alleging that Defendants accessed her credit report without a permissible purpose and failed to respond properly when Alston disputed information they provided to various consumer reporting agencies ("CRAs"), in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x (2012). Presently pending before the Court are six Motions to Dismiss filed by Defendants First National Bank of Omaha ("FNBO"), CNU Online Cashnet USA ("CNU"), GECRB/Synchrony Bank ("Synchrony"), IDS Casualty Insurance Company ("IDS"), SunTrust Bank ("SunTrust"), and Primary Residential Mortgage, Inc. ("PRMI") (collectively, "the Moving Defendants"). At the same time, three Defendants, Montgomery Ward, Power Window and Siding, and Advancepoint

Capital (collectively, "the Unserved Defendants") have not been served with process, and one Defendant, FreedomPlus/Cross River ("Cross River") has been served but has not filed a responsive pleading to Alston's Second Amended Complaint. Having reviewed the pleadings, briefs, and supplemental filings, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motions to Dismiss are GRANTED IN PART and DENIED IN PART, and the claims against the Unserved Defendants are DISMISSED.

## BACKGROUND

The following facts are presented in the light most favorable to Alston, the nonmoving party. In 2016, Alston obtained her credit reports from CRAs TransUnion and Experian, companies which aggregate credit information relating to individual consumers throughout the United States. Upon inspecting the reports, Alston noticed several credit inquiries by various entities, including Defendants, with whom Alston had no business relationship. In September 2016, Alston sent letters to TransUnion and Experian informing them that the credit inquiries were not authorized. Alston further requested that each CRA investigate whether Defendants had a permissible purpose for obtaining her credit report. These letters specifically stated that the inquiries were "not authorized, did not result in a firm offer of credit, were not account reviews, and were not done for purposes of collecting a debt." Second Am. Compl. ¶ 27, ECF No. 211-1. Although TransUnion and Experian were required to notify Defendants of Alston's concerns, Alston did not receive a response from any Defendant.

On April 27, 2017, Alston contacted five of the Moving Defendants and spoke with a representative from each company about the reason that her credit report was accessed. According to Alston, a Synchrony representative "confirmed that Synchrony *only* had a permissible purpose to pull her report in September 6, 2016, but not [o]n May 14, 2016." *Id.* ¶

36. A PRMI representative stated that he did not know the reason why PRMI pulled Alston's credit report but acknowledged that the company had not made an offer of credit to Alston. A CNU representative informed Alston that CNU does not make credit offers to Maryland residents and would not have pulled her report to make a firm offer of credit. FNBO's representative confirmed that FNBO did not make an offer of credit to Alston. A representative of IDS told Alston that it had no record of making an offer of credit to her. Finally, Alston spoke with several SunTrust representatives on May 1, 2017, who stated they were unable to find any record of pulling Alston's credit report for a promotional inquiry.

According to Alston, as a result of the unauthorized acquisitions of her credit report, she incurred costs to correct her credit reports, "mental anguish and emotional distress" from the "invasion of her privacy," and an increased risk of identity theft. *Id.* ¶ 62.

## DISCUSSION

In the Second Amended Complaint, Alston alleges violations of three provisions of the FCRA: 15 U.S.C. § 1681b(f) ("§ 1681b(f)"), which prohibits a person from obtaining a credit report without a permissible purpose; 15 U.S.C. § 1681q ("§ 1681q"), which prohibits obtaining "information on a consumer from a consumer reporting agency under false pretenses"; and 15 U.S.C. § 1681s-2(b) ("§ 1681s-2(b)"), which imposes duties upon "furnishers of information" once they are notified of inaccurate information in a consumer's credit report.

In their Motions to Dismiss, the Moving Defendants assert the following grounds for dismissal: (1) Alston lacks standing to sue under Article III of the United States Constitution; (2) Alston has failed to state a plausible claim of a violation of § 1681b(f) or § 1681q, including that Alston has failed to demonstrate an entitlement to a firm offer of credit necessary to allege a violation; (3) Alston has failed to allege sufficient facts to state a plausible claim for a violation

3

of § 1681s-2(b) because that provision applies only to "furnishers of information," a term that does not include entities, such as the Moving Defendants, that merely obtain a credit report about a consumer.

I.  **Legal Standards**

By challenging Alston's Article III standing, the Moving Defendants are contesting the Court's subject matter jurisdiction over this case. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). It is the plaintiff's burden to show that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal based upon the belief that the plaintiff has failed to make that showing. When, as in this case, a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

The Moving Defendants' remaining arguments seek dismissal under Rule 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the

factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## II. Standing

Article III of the Constitution limits the judicial power of the federal courts to actual "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To invoke this power, a litigant must have standing. *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013). The plaintiff bears the burden of proving standing. *Lujan*, 504 U.S. at 561. A plaintiff must establish (1) an injury in fact (2) fairly traceable to the challenged conduct (3) that is likely to be "redressed by a favorable judicial decision." *Hollingsworth*, 133 S. Ct. at 2661. Beyond the requirements of Article III, to have standing to assert a statutory cause of action, plaintiffs must also show that they fall within "the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014). The Moving Defendants limit their attack on Alston's standing to the first element: injury in fact. An injury in fact requires "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 561 (internal citations omitted). A "concrete" injury may be intangible, but it "must be '*de facto*,' that is, it must actually exist." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

Alston alleges that she has suffered an injury from the release of her credit report to unauthorized recipients, an action which is specifically prohibited by the FCRA. *See* 15 U.S.C. § 1681b(f). The violation of a statute does not automatically satisfy the injury-in-fact requirement "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549. Although such a violation may, "in some circumstances," be sufficient to establish an injury in fact, a plaintiff cannot "allege a bare

5

procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* For example, the *Spokeo* Court noted that a claim under the FCRA that the issuance of a credit report that wrongfully contained false information likely would not establish a concrete injury if the allegedly false information was merely an incorrect zip code. *Id.* at 1550. Rather, Article III standing based on a statutory cause of action depends on the nature of the statute and the alleged harm in question. In examining whether a statutory violation constitutes an injury in fact, a court must consider whether the violation resulted in "the type of harm Congress sought to prevent by requiring disclosure." *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345-46 (4th Cir. 2017); *see also Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) (in assessing whether a statutory violation results in an injury in fact, considering "whether the statutory provisions at issue were established to protect plaintiff's concrete interests" and "whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm, to such interests").

Congress enacted the FCRA to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see also* 15 U.S.C. § 1681(a)(4). The FCRA's restrictions on disclosure of credit reports address privacy interests that have traditionally been protected by the law. *Robins*, 867 F.3d at 1114-15. Indeed, "unauthorized disclosures of information have long been seen as injurious." *In re Horizon Healthcare Servs. Inc. Data Breach Litigation*, 846 F.3d 625, 638 (3d Cir. 2017) (quoting *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 272-74 (3d Cir. 2016)). The Court therefore finds that the FCRA's limitations on the disclosure of credit reports are designed to protect a consumer's concrete interest in the privacy of those reports. The Court further finds that the specific types of violations alleged in this case actually

harm the interest Congress sought to protect. If Defendants obtained Alston's credit report without a permissible purpose, they would have violated Alston's interest in the confidentiality of her report. Courts have thus concluded that allegations of unauthorized access to credit reports pursuant to § 1681b inflict an injury in fact sufficient to establish standing. *See Griffin v. Bank of Am., N.A.*, 226 F. Supp. 3d 899, 903-04 (N.D. Ohio 2016) (holding that a plaintiff alleging that a party had obtained a credit report without a permissible purpose in violation of 15 U.S.C. § 1681b(f) had alleged a concrete injury sufficient to establish Article III standing); *see also Gillison v. Lead Express, Inc.*, No. 16-0041, 2017 WL 1197821, at *8 (E.D. Va. Mar. 30, 2017) (same); *Duraj v. PNC Bank N.A.*, No. 17-775, 2017 WL 5508380, at *2 (N.D. Ohio Nov. 15, 2017) (same). Since Alston has alleged a concrete injury, the invasion of her privacy rights under the FCRA, that is particularized to her and actual, not hypothetical, the Court concludes that she has satisfied the injury-in-fact requirement to establish Article III standing.

Consideration of *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017), cited by the Moving Defendants, does not alter this conclusion. In *Beck*, the plaintiffs brought suit under the Privacy Act of 1974 against a hospital following two reported data breaches through which the hospital lost confidential patient information when a laptop was misplaced or stolen. *Id.* at 266-67. The United States Court of Appeals for the Fourth Circuit found that the plaintiffs did not have Article III standing because the increased risk of identity theft resulting from the breach and the cost of mitigation measures pursued by the plaintiffs did not establish a substantial risk of harm. *Id.* at 273-77. Although the Moving Defendants argue that *Beck* precludes a finding of standing based on a loss of personal information, *Beck* is distinguishable because the "increased risk" of identity theft at issue there was a far more speculative, and far less concrete, harm than the actual

disclosure of the contents of a credit report to specific, identified third party businesses such as Defendants. *See id.*

Alston's alleged injuries differ significantly from those in other recent cases in which courts have declined to find Article III standing for informational injuries. In *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 888 (7th Cir. 2017), a plaintiff alleged a violation of the FCRA because the form he signed authorizing disclosure of his credit report did not meet all of the requirements defined in 15 U.S.C. § 1681b(b)(2)(A). *Id.* at 886. The United States Court of Appeals for the Seventh Circuit found that because the plaintiff had knowingly consented to disclosure but had simply signed a deficient disclosure form, he had not suffered a concrete injury because the purpose of the statutory provision was to protect individuals from the harm of unknowingly consenting to the disclosure of a credit report. *Id.* at 888. In *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017), the plaintiff alleged an injury from his cable company's failure to destroy his personal information once he cancelled his subscription, in violation of 47 U.S.C. § 551(e). *Id.* at 910. However, because Gubala never alleged that Time Warner actually released or intended to release his information to a third party, he failed to allege a concrete injury to his right to privacy. *Id.* at 912. Alston, in contrast, has alleged an actual disclosure of her credit report to an unauthorized party, which is the type of injury against which Congress sought to protect through the FCRA. Accordingly, the Court finds that Alston has established standing to assert her claims.

### III. 15 U.S.C. § 1681b(f)

In Count I of the Second Amended Complaint, Alston alleges that Defendants violated 15 U.S.C. § 1681b(f) when they obtained her credit report from TransUnion or Experian without her authorization and in the absence of any business relationship with Alston. Section 1681b(f)

disclosure of the contents of a credit report to specific, identified third party businesses such as Defendants. *See id.*

Alston's alleged injuries differ significantly from those in other recent cases in which courts have declined to find Article III standing for informational injuries. In *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 888 (7th Cir. 2017), a plaintiff alleged a violation of the FCRA because the form he signed authorizing disclosure of his credit report did not meet all of the requirements defined in 15 U.S.C. § 1681b(b)(2)(A). *Id.* at 886. The United States Court of Appeals for the Seventh Circuit found that because the plaintiff had knowingly consented to disclosure but had simply signed a deficient disclosure form, he had not suffered a concrete injury because the purpose of the statutory provision was to protect individuals from the harm of unknowingly consenting to the disclosure of a credit report. *Id.* at 888. In *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017), the plaintiff alleged an injury from his cable company's failure to destroy his personal information once he cancelled his subscription, in violation of 47 U.S.C. § 551(e). *Id.* at 910. However, because Gubala never alleged that Time Warner actually released or intended to release his information to a third party, he failed to allege a concrete injury to his right to privacy. *Id.* at 912. Alston, in contrast, has alleged an actual disclosure of her credit report to an unauthorized party, which is the type of injury against which Congress sought to protect through the FCRA. Accordingly, the Court finds that Alston has established standing to assert her claims.

### III.    15 U.S.C. § 1681b(f)

In Count I of the Second Amended Complaint, Alston alleges that Defendants violated 15 U.S.C. § 1681b(f) when they obtained her credit report from TransUnion or Experian without her authorization and in the absence of any business relationship with Alston. Section 1681b(f)

imposes civil liability for improperly obtaining or using credit reports. *See Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 900 n.3 (4th Cir. 2003). To assert a violation of § 1681b(f), a plaintiff must plead sufficient facts to establish the following four elements: (1) there was a consumer report; (2) obtained or used by the defendant; (3) without a permissible purpose as defined in § 1681b(a)(1)-(6); and (4) the defendant acted with the specified mental state. *Phillips v. Grendahl*, 312 F.3d 357, 364 (8th Cir. 2002); *see also Bolden v. McCabe, Weisberg & Conway, LLC*, No. DKC-13-1265, 2013 WL 6909156, at *3 (D. Md. Dec. 31, 2013). Under the FCRA, a negligent breach of the statute may result in the recovery of actual damages, *see* 15 U.S.C. § 1681o; a willful breach may result in the recovery of actual damages or statutory damages of up to $1,000 per violation, as well as punitive damages, *see* 15 U.S.C. § 1681n(a)(1)-(2).

Alston has sufficiently alleged that there was a consumer report, specifically, her TransUnion or Experian credit report, which was obtained by each of Defendants. The Moving Defendants contend that Alston has failed to allege sufficient facts to establish that the reports were obtained without a permissible purpose. Under the FCRA, a CRA may release a consumer report only under certain specified conditions, including (1) in response to a court order or a federal grand jury subpoena; (2) in accordance with the consumer's written instructions; or (3) to a person which it has reason to believe intends to use the information for an enumerated permissible purpose. § 1681(a)(1)-(3). As relevant here, an entity may obtain a consumer's credit report from a CRA without the consumer's consent "in connection with any credit or insurance transaction that is not initiated by the consumer only if . . . the transaction consists of a firm offer of credit or insurance." § 1681b(c)(1)(B)(i). A "firm offer of credit or insurance" is defined as "any offer of credit or insurance to a consumer that will be honored if the consumer is

determined . . . to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(*l*). Under this provision, a business may select various creditworthiness criteria and then purchase from a CRA a list of potential customers who currently meet those criteria. *See, e.g., Kennedy v. Chase Manhattan Bank USA, N.A.*, 369 F.3d 833, 840-41 (5th Cir. 2004). The information released is essentially limited to the name and address of the consumer and does not include any specific credit report entries. *See* 15 U.S.C. § 1681b(c)(2). The existence of these "promotional inquiries" appears only in reports disclosed by the CRA to the consumer, not in consumer reports released to third parties, and do not affect a consumer's credit score. *See Miller v. Trans Union, LLC*, 644 F. App'x. 444, 447 (6th Cir. 2016) (citing 15 U.S.C.. § 1681g); Fed. Trade Comm'n, *Prescreened Credit and Insurance Offers*, https://www.consumer.ftc.gov/articles/0148-prescreened-credit-and-insurance-offers (Mar. 2011). The companies purchasing these lists then send solicitations to the customers on the lists in the form of pre-approved offers of credit. *Kennedy*, 369 F.3d at 841.

Alston's § 1681b claim relies on her allegation that she never received a firm offer of credit or insurance from any Defendant. According to Alston, the fact that she received no such offers renders the promotional inquiries illegal. The Moving Defendants argue that they are not required to extend a firm offer of credit to every consumer on the pre-screened list if a company determines the consumer does "not meet its criteria for creditworthiness." SunTrust Reply at 3, ECF No. 190. However, the FCRA's definition of a "firm offer of credit" contemplates that the assessment of a consumer against creditworthiness criteria occurs after, not before, the offer is made. A firm offer of credit is one that "will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer, except that the offer may be further conditioned on one or more of the

following" three conditions. 15 U.S.C. § 1581a(*l*). By stating that the offer will be "honored," rather than "made" upon a determination of compliance with certain criteria, the definition contemplates the issuance of an initial offer, with the offer "honored" if later analysis of the consumer's application reveals that the consumer meets the set criteria.

Moreover, the plain language of the definition establishes that the three specific conditions upon which an offer can be made are contingencies to be considered after, not before, the initial transmission of a firm offer of credit to the consumer. The language "the offer may be further conditioned" can only be fairly interpreted as permitting an offer made to be subject to certain conditions which, upon later examination, could result in the offer being rescinded. For example, a firm offer of credit may be conditioned on a determination, "based on information in the *consumer's application for the credit or insurance*," that the consumer meets certain "specific criteria bearing on credit worthiness or insurability" that were established before the offer was made. 15 U.S.C. § 1681a(*l*)(1) (emphasis added). In this scenario, the evaluation against these criteria occurs after the consumer has received an offer and submitted an application. A firm offer of credit may also be conditioned on "[v]erification . . . that a consumer continues to meet the specific offer criteria used to select the consumer for the offer," based on "information in the consumer's application for the credit or insurance." *Id.* § 1681a(*l*)(2). Again, the plain language of this condition establishes that verification occurs after the offer has been made and an application has been submitted. Finally, a firm offer of credit may be conditioned on a consumer "furnishing any collateral that is a requirement for the extension of credit" that was "established before selection of the consumer for the offer of credit" and "disclosed to the consumer in the offer of credit." *Id.* § 1681a(*l*)(3). This condition plainly establishes that the analysis whether a consumer meets collateral requirements occurs after, not

before, the firm offer of credit is made. Thus, under the plain language of the statute, the existence of possible conditions that could be placed on offer does not excuse the failure to make an offer in the first place.

Indeed, in *Harris v. Database Mgmt. & Mktg., Inc.*, 609 F. Supp.2d 509 (D. Md. 2009), the court confirmed that the sequence of events under the firm offer exception consists of (1) a lender requests and purchases from a CRA a list of consumers who meet certain financial criteria; (2) the lender extends firm offers of credit; (3) once a consumer seeks to accept the offer, the lender gains access to the consumer's credit report to confirm compliance with the pre-selected criteria and verify compliance with the permitted conditions; and (4) if the conditions remain satisfied, the line of credit must be provided, or the access to the consumer's credit information would have been impermissible. *Id.* at 513-14.

The Moving Defendants have not cited any statute, regulation, case, or administrative publication that supports the view that a company may purchase a pre-screened list of consumers but not extend a firm offer of credit to those consumers. Rather, in *Cole v. U.S. Capital*, 389 F.3d 719, 725 (7th Cir. 2004), the court recognized the requirement to extend such an offer when it reversed the dismissal of an FCRA complaint where the plaintiff had alleged a violation based on the allegations that she had not authorized a finance company to access to her credit report and that a flyer she received from that company did not qualify as "firm offer of credit." *Id.* at 722, 725. Indeed, a reading of the FCRA that allowed companies to obtain information about a consumer without extending a firm offer of credit would be inconsistent with congressional intent in enacting § 1681b. Congress "balanced any privacy concerns created by pre-screening with the benefit of a firm offer of credit or insurance for all consumers identified through the screening process." *Cole*, 389 F.3d at 725 (quoting S. Rep. No. 103-209, at 13 (1993)). The

Senate Report on this provision specifically stated that "[i]n exchange for allowing credit and insurance providers to obtain lists based on more sensitive information . . . the bill requires that the credit or insurance provider make a 'firm offer.'" S. Rep. No. 103-209, at 14 (1993); *Cole*, 389 F.3d at 725; *see also Trans Union Corp. v. FTC*, 267 F.3d 1138, 1143 (D.C. Cir. 2001) ("Congress apparently believes that people are more willing to reveal personal information in return for guaranteed offers of credit than for catalogs and sales pitches."). Thus, where Alston has plausibly alleged that Defendants never sent her a firm offer of credit, and there is no sign that they obtained her credit report for another permissible purpose, the Court finds that Alston has sufficiently pleaded the third element of a § 1681b(f) claim.

The Moving Defendants also assert that Alston has failed to allege sufficient facts as to the element that they acted willfully or negligently. Alston, however, has sufficiently alleged that Defendants willfully violated the FCRA. Although a state of mind, such as willfulness, can be alleged generally, *see* Fed. R. Civ. P. 9(b), a party still needs to plead sufficient facts to support a plausible inference of the alleged mental state. *See, e.g., Crugher v. Prelesnik*, 761 F.3d 610, 617 (6th Cir. 2014); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012); *see also U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (assessing a complaint's factual basis for the defendant's intent and concluding that it was insufficient under Rule 9(b)). When courts have accepted allegations of willful violations of § 1681b(f), there have been additional factual allegations beyond a mere assertion of a violation that provide some basis to infer an impermissible purpose for obtaining the credit report. For example, the plaintiff in *Martin v. Asset Acceptance, LLC*, No. 11 CV 6256, 2012 WL 3042524 (N.D. Ill. July 25, 2012), alleged that the defendant accessed only credit reports belonging to customers who had closed their accounts with the defendant, a fact the court found

indicative of a willful violation of the statute. *Id.* at *1, *4; *see also* § 1681b(a)(1)-(6). Likewise, in *Smith v. LexisNexis Risk Solutions, Inc.*, No. 12 CV 8872, 2014 WL 866413 (N.D. Ill. Mar. 5, 2014), the plaintiff's credit report revealed that the defendant had accessed the report on behalf of various insurance companies, but affidavits submitted by the plaintiff showed that the insurance companies had never asked the defendant to obtain the plaintiff's credit report. *Id.* at *1, *4.

Here, Alston has alleged her credit reports reflected that the Moving Defendants had represented that they pulled her credit report for a permissible reason, with IDS, Synchrony, and SunTrust specifically asserting that they did so as part of a promotional inquiry. But Alston has also asserted that in conversations with representatives of the Moving Defendants, she was told that IDS, PRMI, FNBO, and CNU had no record of making any firm offer of credit, and that SunTrust had not made a promotional inquiry. Notably, Alston alleges that the Synchrony representative acknowledged that the company did not have a permissible purpose to pull her credit report in May 2016. At the motion to dismiss stage, these allegations of contradictory statements are sufficient to support an inference that Defendants willfully accessed Alston's consumer report without a permissible purpose.

Based on the same allegations relevant to willfulness, the Court finds that Alston has properly alleged a negligent violation of § 1681b(f). Nevertheless the Moving Defendants assert that Alston has failed to plead sufficient facts to support a claim of actual damages, a necessary component of a negligence claim under the FCRA. *See* 15 U.S.C. § 1681o(a)(1) (allowing the recovery of only actual damages for a negligence claim under the FCRA); *Davenport v. Sallie Mae, Inc.*, 124 F. Supp.3d 574, 581-82 (D. Md. 2015). Although Alston asserts that she has suffered or will suffer a "reduction of credit score" and "damage to financial reputation," Second

Am. Compl. ¶ 63, she alleges no facts to show that she was denied credit, lost access to credit, or suffered any other economic harm as a result of the Defendants' actions. Alston's assertion of harm based on "the possibility of future unauthorized inquiries into personal financial information" and the "risk of additional instances of identity theft" also does not state a claim for damages. Second Am. Compl. ¶ 63. The Fourth Circuit has squarely rejected the general increased risk of identity theft as a basis for Article III standing, and its analysis applies with equal force to preclude a showing of actual damages here. *See Beck*, 848 F.3d at 273-76. However, Alston's allegation of "mental anguish and emotional distress from the ongoing invasion of [her] privacy" is sufficient to state this element. *See supra* part II (finding that the invasion of privacy from unauthorized disclosure of a credit report can constitute an injury in fact). In order to prevail on this element, Alston will need to produce actual evidence of emotional distress such as medical treatment, physical symptoms, loss of income arising from such distress, or testimony about an adverse impact on the plaintiff's conduct and lifestyle. *See Doe v. Chao*, 306 F.3d 170, 180-81 (4th Cir. 2002) (granting summary judgment based on the failure to provide evidence of emotional distress); *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 503 (4th Cir. 2007) (in upholding a damages award for an FCRA violation, noting that a plaintiff's testimony must not be conclusory and instead must sufficiently articulate demonstrable emotional distress). At the motion to dismiss stage, however, Alston has sufficiently alleged damages in the form of emotional distress arising from the alleged invasion of privacy.

Having found that Alston has sufficiently pleaded each element of a § 1681b(f) claim, the Court denies the Moving Defendants' Motions to Dismiss as to this cause of action.

## IV. 15 U.S.C. § 1681q

Section 1681q states that "any person who knowingly and willfully obtains information on a consumer from a [CRA] under false pretenses shall be" fined or imprisoned. 15 U.S.C. 1681q. This criminal provision of the FCRA was used by courts to impose civil liability for improperly obtaining or using credit reports prior to the 1997 enactment of § 1681b(f), which rendered reliance on § 1681q for civil violations unnecessary. *Ausherman,* 352 F.3d at 900 n. 3. Because the analysis of a § 1681q claim is the same as for a § 1681b(f) claim, *see id.*, the Court will dismiss the § 1681q claim as duplicative.

## V. 15 U.S.C. § 1681s-2(b)

In Count II of the Second Amended Complaint, Alston also alleges that Defendants violated 15 U.S.C. § 1681s-2(b), which requires that "furnishers of information" undertake certain actions upon notification that information they provided to a CRA was inaccurate. 15 U.S.C. § 1681s-2(b). A "furnisher of information" is "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 16 C.F.R. § 660.2(c) (2017). A furnisher may be "any person with relevant data about a consumer's financial activity" but the most common furnishers are "credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies." *Chiang v. Verizon New England, Inc.,* 595 F.3d 26, 35 n. 7 (1st Cir. 2010). Under regulations promulgated by the Federal Trade Commission ("FTC"), a furnisher does not include an entity that "[p]rovides information to a [CRA] solely to obtain a consumer report in accordance with" § 1681b(a) and (f). 16 C.F.R. § 660.2(c)(1).

Alston specifically alleges that she had no accounts or business dealings with any of Defendants. Indeed, the complete lack of any relationship between Alston and Defendants forms the basis for Alston's § 1681b(f) claim. However, if Alston lacks an account or business relationship with Defendants, they cannot plausibly be deemed to hold relevant information about Alston, let alone to have furnished it to a CRA. The only communication that Alston alleges any Defendant to have made to a CRA was an inquiry, which cannot constitute "information relating to" Alston. Defendants therefore cannot, based on the allegations in the Second Amended Complaint, be deemed to be "furnishers of information." Accordingly, Alston cannot state a plausible claim for a violation of § 1681s-2(b) by Defendants. Count II will therefore be dismissed.

## VI. Unserved Defendants

The Court ordered Alston to show proof of service for the Unserved Defendants no later than January 12, 2018, then extended that deadline to February 1, 2018, and warned that the failure to serve by that deadline would result in the dismissal of the claims against those Defendants. Alston has not served the Unserved Defendants. Accordingly, the claims against the Unserved Defendants are dismissed without prejudice. *See* Fed. R. Civ. P. 4(m); D. Md. Local R. 103.8(a).

## CONCLUSION

For the foregoing reasons, the Moving Defendants' Motions to Dismiss are GRANTED IN PART and DENIED IN PART. The Motions are granted as to Count II and the claim in Count I under 15 U.S.C. § 1681q, which are dismissed. The Motions are denied as to the claim in Count I under 15 U.S.C. § 1681b(f). Alston's claims against the Unserved Defendants are DISMISSED. A separate Order shall issue.

Date: February 7, 2018

THEODORE D. CHUANG
United States District Judge